# CUYAHOGA METROPOLITAN HOUSING AUTHORITY

v.

# HARRIS.

2006-Ohio-6918.]

Cleveland Municipal Court,
Housing Division, Cuyahoga County, Ohio.

No. 06–CVG–22921.

Decided Nov. 7, 2006.

Michael P. McGuire, for plaintiff.

Peter M. Iskin and H. Edward Gregory, for defendant.

PIANKA, Judge.

{¶ 1} This case is before the court on the objections of the Cuyahoga Metropolitan Housing Authority ("CMHA") to the magistrate's decision. For the following reasons, CMHA's objections are overruled, and the magistrate's decision is affirmed.

{¶ 2} This is an eviction action initiated by CMHA against its tenant, Lakiasha Harris. The essential facts are undisputed, as evidenced by the stipulations submitted by the parties: Harris lives at 4509 Quincy Avenue, # 101, Cleveland, Ohio ("the premises") under a written lease with CMHA. Harris resides in the premises pursuant to the Conventional Public Housing program.

{¶ 3} Harris's lease requires Harris to "insure [sic] that Resident, household members, family members, guests or other persons, under the residents [sic] control, shall not engage in * * * any drug related criminal activity ON or OFF C.M.H.A. premises."

{¶ 4} On or about June 16, 2006, CMHA police came to Harris's apartment to arrest a guest of Harris, Kevin Daniels, on a federal warrant. CMHA police searched Daniels incident to the arrest and found a rock of crack cocaine in his pocket. CMHA conducted a protective sweep inspection of Harris's apartment and found no drugs or drug paraphernalia. Harris testified before the magistrate that she was unaware that Daniels had the cocaine in his possession; no

evidence was introduced to contradict that testimony. Further, Harris did not interfere with Daniels's arrest.

{¶ 5} CMHA seeks to evict Harris based upon the alleged violation of her lease; that is, Harris, CMHA argues, failed to ensure that her guest did not engage in drug-related criminal activity.

{¶ 6} First, CMHA argues that "it was misleading for the Magistrate to state that he found for the Defendant because she did not engage in drug related activity when in fact the decision was based upon the Defendant's claim that she was not aware of Mr. Daniels [sic] possession of crack cocaine." Second, CMHA argues that the relevant law requires the court to enter a judgment in favor of CMHA on its eviction claim based upon *Dept. of Hous. & Urban Dev. v. Rucker* (2002), 535 U.S. 125, 122 S.Ct. 1230, 152 L.Ed.2d 258. *Rucker*, CMHA argues, requires local public housing authorities to evict a tenant when a member of the tenant's household or a guest of the tenant engages in drug-related criminal activity, whether or not the tenant knew, or should have known, of the drug-related activity.

{¶ 7} The Supreme Court held in *Rucker* that "42 U.S.C. 1437d(*l*)(6) unambiguously requires lease terms that vest local public housing authorities with the discretion to evict tenants for the drug-related activity of household members and guests whether or not the tenant knew, or should have known, about the activity." Id. at 130, 122 S.Ct. 1230, 152 L.Ed.2d 258. The Public Housing Authorities ("PHAs"), then, have the discretion, but are not required by *Rucker* or Section 1437d (*l*)(6), Title 42, U.S.Code, to pursue an eviction action against an innocent tenant.

{¶ 8} This reading is consistent with the letters issued to the PHAs by the Department of Housing and Urban Development ("HUD") after the *Rucker* decision. In the April 16, 2002 letter, HUD Secretary Mel Martinez addresses the *Rucker* decision. He states that the Supreme Court upheld the "household responsibility" clause, but also urges public housing administrators "to be guided by compassion and common sense" and to "consider the seriousness of the offense and how it might impact other family members." Martinez adds that the household-responsibility clause is a tool that "should be applied responsibly," because, Martinez notes, "[a]pplying it rigidly could generate more harm than good." HUD Assistant Secretary Michael M. Liu, in a June 6, 2002 letter, offered support for the application of discretion by the PHAs, as opposed to a rigid requirement that eviction be initiated. He states, "After *Rucker*, PHAs remain free, as they deem appropriate, to consider a wide range of factors in deciding whether, and whom, to evict as a consequence of such a lease violation. Those factors include, among many other things, the seriousness of the violation, the effect that eviction of the entire household would have non household

members not involved in the criminal activity, and the willingness of the head of the household to remove the wrongdoing household member from the lease as a condition for continued occupancy."

{¶ 9} These letters and the *Rucker* decision support Harris's contention that PHAs have discretion not to file an eviction action against innocent tenants based upon the drug-related criminal activity of a guest. That CMHA had the discretion not to file this action, however, does not preclude CMHA from having done so.

{¶ 10} CMHA, then, under *Rucker* and the terms of Harris's lease, had the discretion to file this action against Harris. And the undisputed facts in this case establish that a lease violation did occur—Harris's guest did participate in drug-related criminal activity on the premises.

{¶ 11} The question then becomes, given the lease violation, did the magistrate still properly rule in favor of Harris?

{¶ 12} As noted by the defendant, despite the existence of a lease violation, this court may "weigh all equitable considerations in determining whether a forfeiture is to be declared." *S. Hotel Co. v. Miscott* (1975), 44 Ohio App.2d 217, 73 O.O.2d 235, 337 N.E.2d 660. And the federal law on terminating a public housing tenancy for the criminal conduct of a guest does not preempt the equity authority of the court to exercise its discretion to enter judgment in favor of an innocent tenant and against the PHA in an eviction action. 66 F.R. 28776, 28791 ("This final rule does not * * * preempt State law within the meaning of Executive Order 13132"). *Rucker* does not alter this conclusion and does not provide a basis for preempting or limiting this court's equity powers.

{¶ 13} This court, then, concludes that the magistrate properly applied the principles of equity when ruling in favor of Harris and denying CMHA's eviction. The facts in this case reveal that Harris was an innocent tenant—CMHA seeks to evict her based upon the conduct of a guest, not a member of her household, whom she neither knew nor should have known was involved in drug-related criminal activity. Harris cooperated with the CMHA police arresting the guest and allowed them to search her apartment. The search turned up no evidence of drugs or drug activity. To permit the eviction of Harris under these circumstances would be to hold that public-housing tenants can have no guests or, equally implausible, to hold that public-housing tenants must conduct a thorough search of each guest every time guests enter PHA property. This court is not prepared to make such a holding.

{¶ 14} This ruling should not be construed to require the PHA to prove that a tenant was aware of the drug-related criminal activity of a guest in order to secure an eviction of the tenant; rather, in this case, this tenant has established

to the satisfaction of the court that equity prohibits her eviction from the premises.

{¶ 15} The plaintiff's objections to the magistrate's decision are overruled. The magistrate's decision, and the prior decision of this court, is affirmed and judgment rendered for the defendant on the plaintiff's first cause of action.

So ordered.